**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RAYVON BRIDGES,

               Plaintiff,                          Case No.
                                                 Hon.

-vs-

THE CITY OF DETROIT,
LISA ALEXANDER, KENNETH VALRIE,
CHARLES LYNEM, and RYAN PAJOWSKI

               Defendants.

_____/

| | |
|---|---|
| ROBERT BURTON-HARRIS (P81843) | Cheryl L. Ronk (P54897) |
| Burton-Harris Law, PLC | Senior Assistant Corporation Counsel |
| Attorney for Plaintiff | City of Detroit Law Department |
| 500 Griswold St., Ste. 2450 | Attorney for Defendants Detroit and Pajowski |
| Detroit, MI 48226 | 2 Woodward Ave., Ste. 500 |
| (313) 572-4397 | Detroit, MI 48226 |
| robert@burtonharrislaw.com | 313-237-2696 |
| | ronkc@detroitmi.gov |

_____/

**Notice of Removal of Civil Action**

      Under 28 U.S.C. § 1441, Defendant City of Detroit removes this civil action predicated upon the following:

1.     On February 18, 2025, plaintiff commenced this action in the Third Judicial Circuit of Michigan.  This action is now pending before that court.

2.     Defendant RYAN PAJOWSKI was served with the summons and complaint on or about March 21, 2025.

3.     The above entitled action is a civil suit for alleged civil rights violations in which plaintiff seeks compensatory and punitive damages, allegedly arising, in part, from a violation or deprivation of rights under the United State Constitution, as more fully appears in the copy of the complaint attached to

this notice.

4.   This Court has original jurisdiction of the above-entitled action under 28 U.S.C. § 1331 and removal of the action to this Court is proper under 28 U.S.C. § 1441(a).

5.   Under 28 U.S.C. § 1441(c) this action is removed in its entirety to this Court.

6.   Copies of all process, pleadings, and orders served upon the defendant in this matter are attached.

7.   This notice is timely, having been filed within thirty days after service of Summons and Complaint upon the Defendant.

8.   The undersigned has prepared a written notice of the removal of this action. Such notice has been provided to counsel for Plaintiff and to the clerk of the court from which this matter is removed. Promptly after filing this Notice of Removal of Civil Action, the undersigned will file a copy with the clerk of the court from which this action is removed, and provide a copy to counsel of record by first class mail and email.

9.   Based upon the authorities and facts recited above, Defendant removes the above-entitled action to this Court.

                                        /s/ *Cheryl L. Ronk*
                                       Cheryl L. Ronk (P54897)
                                       Senior Assistant Corporation
                                       Coleman A. Young Municipal
                                       Center 2 Woodward Avenue,
                                       Suite 500
Dated: April 16, 2025                  Detroit, Michigan 48226


### Certificate of Service

The undersigned certifies that on April 16, 2025, she served the foregoing papers upon the above named counsel of record by U.S. Mail and by email.

   */s/ Cheryl L. Ronk*
   Cheryl L. Ronk

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | SUMMONS | CASE NO. 25-002447-NO Hon. Kathleen M. McCarthy |
|---|---|---|

Court telephone no.: 313-224-5481

| Plaintiff's name(s), address(es), and telephone no(s) BRIDGES, RAYVON | v | Defendant's name(s), address(es), and telephone no(s). PAJAKOWSKI, RYAN |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no Robert DeAngelo Burton-Harris 81843 500 Griswold St Detroit, MI 48226 | | 347 Wellington Crescent Mount Clemens MI |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in ☐ this court, ☐ _____ Court, where it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.    | SUMMONS |

## NOTICE TO THE DEFENDANT: In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date 2/18/2025 | Expiration date* 5/20/2025 | Court clerk Yolanda Payne |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (3/23)        **SUMMONS**        MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105



MCL 600.1910, MCR 2.104, MCR 2.105

# STATE OF MICHIGAN
# IN THE THIRD CIRCUIT COURT
# COUNTY OF WAYNE

**RAYVON BRIDGES,**

            Plaintiff,

                                Case No. 25-         -NO

v.                                       Hon.

**CITY OF DETROIT**, a municipal corporation;
**LISA ALEXANDER**, individual and official capacity;
**KENNETH VALRIE**, individual and official capacity;
**CHARLES LYNEM**, individually; and
**RYAN PAJAKOWSKI**, individually;
        jointly and severally.

            Defendants.

| |
|---|
| ROBERT BURTON-HARRIS (P81843)<br>**BURTON-HARRIS LAW, PLC**<br>*Attorney for Plaintiff*<br>500 Griswold St., Suite 2450<br>Detroit, MI 48226-3421<br>Office: (313) 572-4397<br>Cell: (734) 548-5148<br>Fax: (734) 999-0452<br>Robert@BurtonHarrisLaw.com |

No civil action between these parties or arising out of the transaction or occurrence alleged in the complaint has been previously filed in this or any other court.

## <u>COMPLAINT AND JURY DEMAND</u>

NOW COMES Plaintiff, **RAYVON BRIDGES,** by and through his counsel, **BURTON-HARRIS LAW, PLC**, asserts this Complaint and Jury Demand against the Defendants based on the following:

## NATURE OF PLAINTIFF'S CLAIMS

1.  This action arises from civil rights violations under the Fourth Amendment to the U.S. Constitution; 42 U.S.C. § 1983; *Monell v Dep't of Soc. Servs.*, 436 U.S. 658 (1978); and parallel state law claims arising under the common law of the State of Michigan.

## JURISDICTION AND VENUE

2.  At all relevant times, Defendants acted under color of laws, statutes, ordinances, policies, practices, customs, and usages of the State of Michigan, City of Detroit, and the Detroit Police Department.

3.  Jurisdiction is conferred by MCL 600.605 and the Supremacy Clause. US Const. art. VI, cl. 2 (*federal claims*).

4.  Venue is proper in the Third Circuit Court because Plaintiff's injuries occurred in Wayne County, MI.

5.  Plaintiff claims damages exceeding Twenty-Five Thousand ($25,000.00) Dollars.

6.  Plaintiff demands a jury trial on all issues so triable .

## **PARTIES**

7.   RAYVON BRIDGES ("Plaintiff") is a 22-year-old Black man and resident of Wayne County, Michigan.

8.   The CITY OF DETROIT ("Defendant City") is a municipal corporation duly organized and existing under the Constitution and laws of the State of Michigan. It is authorized by law to maintain and operate the Detroit Police Department ("DPD"). By and through its agents, including but not limited to the Chief of Police, its supervisors, operating officers, and its final policymakers. Defendant City, at all relevant times, acting through its official policy makers, established, promulgated and implemented the policies, customs and practices, written and unwritten, of  DPD, regarding investigating suspected crimes, training, supervision, and discipline of the employees of said department.

9.   LISA ALEXANDER ("Defendant Alexander"), at all relevant times herein, was employed by the Detroit Police Department as a Corporal assigned to the Special Victims Unit and acting within the scope of her employment under color of law. On information and

3

belief, Defendant Alexander resides in Wayne County, Michigan. She is sued in her individual and official capacities.

10. KENNETH VALRIE ("Defendant Valrie"), at all relevant times herein, was employed by the Detroit Police Department as a Detective and acting within the scope of his employment under color of law. On information and belief, Defendant Valrie resides in Wayne County, Michigan. He is sued in his individual and official capacities.

11. CHARLES LYNEM ("Defendant Lynem"), at all relevant times herein, was employed by the Detroit Police Department as a Sergeant and acting within the scope of his employment under color of law. On information and belief, Defendant Lynem resides in Wayne County, Michigan. He is sued in his individual capacity.

12. RYAN PAJAKOWSKI ("Defendant Pajakowski"), at all relevant times herein, was employed by the Detroit Police Department as a Police Officer and acting within the scope of his employment under color of law. On information and belief, Defendant Pajakowski resides in Wayne County, Michigan. He is sued in his individual capacity.

## COMMON ALLEGATIONS OF FACT

### Criminal Allegations Against Plaintiff

13. Plaintiff incorporates all preceding paragraphs by reference as if fully restated here.

14. On January 31, 2023, non-party Detroit police officers were dispatched to Baumont Hospital in Grosse Point, MI for a "rape report".

15. Plaintiff's 12-year-old cousin, S.B., and her mother, Tiffany Davis, told officers that Plaintiff sexually assaulted S.B. "at 9:30 pm" on January 22, 2023, at a family member's home with several adults and other children present.

16. After being prompted by her mother, S.B. gave details of the alleged assault including claims that Plaintiff had ejaculated "all on her face" and the surrounding area (i.e., floor, bed, walls, etc.)

17. S.B. claimed that only one other adult was in the house but was in the basement during the alleged assault.

18. Tiffany Davis also told officers that Plaintiff was "in a gang", "had a baby by a 14-year-old," and recently impregnated a 13-year-old.

19. The responding officers memorialized Tiffany Davis's and S.B.'s statements in their written reports.

20. None of Tiffany Davis's or S.B.'s statements were true. Plaintiff was approximately 20 miles away at the time of the alleged sexual assault evinced by ride-sharing app receipts and a dozen witnesses who could and would confirm the same.

21. Contrary to S.B.'s allegations, there were approximately 10 adults and teenagers in the house during the alleged assault.

22. Tiffany Davis blamed S.B. for the 11-day reporting delay but could not explain to the officers why she did not immediately report the assault when she supposedly learned about it from S.B. on January 27, 2023.

23. S.B.'s initial account was objectively incredible and inconsistent.

### The Detroit Police Department's Investigation

24. Plaintiff's criminal investigation was assigned to Defendant Alexander as the Officer in Charge ("OIC").

25. The OIC's responsibilities include investigating the allegations, conferring with the relevant prosecutor, updating complainants of the progress of the case, and ensuring that all relevant evidence

and prosecution witnesses are present at the defendant's Preliminary Examination in district court.

26. On or about February 10, 2023, Defendant Alexander and the prosecutor arranged for S.B. to undergo a forensic interview (e.g., Kids-TALK).

27. During the Kids-TALK interview, S.B.'s account of the alleged assault became more incredible and less consistent. For instance, S.B. now claimed that she told another relative, Mia Prince, and her mom about the alleged assault the same night it supposedly happened.

28. S.B. told the forensic interviewer that Plaintiff had asked her for sex at a child's hotel pool party the day before the alleged sexual assault with several identified witnesses present.

29. S.B. also told the forensic interviewer that Plaintiff had forced her to "give him head" in 2021 but was interrupted by her older brother, Samuel Sloan Jr., who "punched [Plaintiff] in the face" causing Plaintiff to "run out the house".

30. S.B. told the forensic interviewer that her mother was aware of all the instances of sexual assault despite Tiffany Davis's denials.

31.    Defendant Alexander and, on information and belief, Defendant
       Valrie were either present during the forensic interview or watched
       a recording of it before criminal charges were authorized by the
       Wayne County Prosecutor's Office.

## Plaintiff's Arrest and Interrogation

32.    On February 17, 2023, Plaintiff was a passenger in a vehicle that
       was stopped by Defendant Pajakowski and his partner.

33.    Defendant Pajakowski arrested Plaintiff solely based on the
       representations of Defendant Lynem and Defendant Alexander
       that there was sufficient probable cause for his arrest.

34.    On February 18, 2023, Defendant Alexander and Defendant Valrie
       interrogated Plaintiff about S.B.'s allegations.

35.    For more than an hour, Plaintiff denied *all* of S.B.'s allegations,
       provided Defendant Alexander and Defendant Valrie with the
       names and phone numbers of several witnesses who could verify his
       statements and whereabouts, and begged Defendant Alexander and
       Defendant Valrie to follow-up with *anyone* at the hotel, including
       staff at the pool party or any of the dozen or so people who were at
       the house during the alleged sexual assault.

36. Plaintiff explained that Tiffany Davis had caused S.B. to make similar unfounded allegations against her *current* boyfriend who was charged by the Wayne County Prosecutor's Office but released due to a lack of evidence to proceed to trial (i.e., S.B. was unreliable).

37. Plaintiff also demanded that Defendant Alexander and Defendant Valrie take his DNA to dispel any disbelief and offered to take a polygraph test.

38. Defendant Valrie assured Plaintiff that they would contact Plaintiff's witnesses and explained why it was important to do so for their investigation.

39. Defendant Valrie also told Plaintiff that they would facilitate the polygraph test.

40. Defendants Alexander and Valrie failed to contact *any*one Plaintiff identified during his interrogation, including adults or teenagers S.B. claimed were present at the hotel pool party or the house where the alleged sexual assault occurred.

41. Defendants Alexander and Valrie did not reach out to the two alleged underage mothers of Plaintiff's children, who were, in fact, adults at all relevant times.

42. Despite having seized Plaintiff's cell phone and reviewed its contents, neither Defendant Alexander nor Defendant Valrie memorialized the fact that they found no evidence supporting S.B.'s allegations.

43. Defendant Alexander intentionally and falsely claimed in her Investigator's Report that Mia Prince was contacted but was "uncooperative". In fact, Mia Prince was never contacted by anyone from the Detroit Police Department.

44. Defendant Valrie intentionally did not memorialize Plaintiff's interrogation in violation of Detroit Police Department policy to avoid highlighting the lack of probable cause for Plaintiff's arrest and subsequent prosecution.

45. Despite the absence of corroborating evidence and S.B.'s inconsistent statements, including those from the Kids-TALK interview, Assistant Prosecuting Attorney Tina Ripley authorized two serious charges against Plaintiff.

Plaintiff's Formal Charges and District Court Proceedings

46. Plaintiff was charged with Count 1: Criminal Sexual Conduct – 1st Degree (MCL 750.520b(2)(b) and Count 2: Aggravated Indecent Exposure (MCL 750.335a(2)(b). If found guilty of count 1, Plaintiff would serve a *mandatory-minimum* of 25 years in prison, be added to the sex offender's registry with all its restrictions and spend the rest of his life on a GPS tether monitored by the probation department.

47. On February 20, 2023, Plaintiff was arraigned. Based on Defendant Alexander's Investigator's Report, Plaintiff was given a high cash bond that he could not afford.

48. While lodged at the Wayne County Jail, Plaintiff was harassed and threatened by inmates due to the nature of the charges, placed in solitary confinement, and suffered extreme emotional distress requiring him to be put on "suicide watch".

49. On February 27, 2023, the court, Judge Kenneth King presiding, granted Plaintiff's motion to reduce his bond amount over the objections of Assistant Prosecutor Tina Ripley. However, Plaintiff

was required to wear a GPS ankle tether and was restricted to home confinement. Plaintiff was released several days later.

50. Plaintiff's defense counsel and Assistant Prosecutor Tina Ripley discussed Plaintiff's case multiple times before the Preliminary Examination. Ms. Ripley claimed that she discussed S.B.'s allegations and the lack of corroborating evidence with Defendant Alexander, including interviewing witnesses identified by Plaintiff and defense counsel. According to Ms. Ripley, Defendant Alexander had attempted to contact these witnesses without success.

51. Defendant Alexander, in fact, never attempted to contact any of the witnesses per the witnesses themselves who were desperate to talk to anyone from the prosecutor's office or police department about S.B.'s demonstrable lies.

52. Plaintiff's defense counsel relayed his concerns about that lack of evidence against Plaintiff to Ms. Ripley and her direct supervisor, Assistant Prosecutor Matthew Makepeace, who accompanied Ms. Ripley to the second day of Plaintiff's Preliminary Examination on March 31, 2023.

53. Assistant Prosecutor Matthew Makepeace was unconcerned about the lack of evidence against Plaintiff but incensed by defense counsel's e-mail message that included notice that Plaintiff's case would likely result in "protracted litigation involving [the Wayne County Prosecutor's Office]" and the investigating officers.

54. On the same day, Mr. Makepeace and Ms. Ripley interviewed only one of Plaintiff's ten witnesses who appeared to testify on his behalf: Samuel Sloan Jr., S.B.'s brother, who allegedly interrupted the 2021 sexual assault of his sister and, as S.B. claimed (and testified), "punched Plaintiff in the face".

55. Defendant Alexander declined to appear at Plaintiff's preliminary examination despite receiving a subpoena to appear from Ms. Ripley.

56. After hearing S.B.'s increasingly implausible testimony and seeing multiple witnesses testify that they observed S.B. throughout the day of the hotel pool party and the night of the alleged assault, confirming Plaintiff was not present at the house, and that S.B. "completely fabricated" the 2021 sexual assault—as testified by her own brother—Assistant Prosecutors Ms. Ripley and Mr. Makepeace

*still* moved to bind over Plaintiff for trial on the Criminal Sexual Conduct – First Degree charge.

57.   Judge Kenneth King denied the prosecutor's motion and dismissed the case for lack of probable cause.

58.   The Wayne County Prosecutor's Office did not appeal the dismissal of the charges.

<u>Plaintiff's Injuries</u>

59.   Plaintiff spent approximately 20 days wrongfully incarcerated at the Wayne County Jail.

60.   During those 20 days, Plaintiff was held in solitary confinement for 23 hours per day.

61.   During those 20 days, Plaintiff's mental health deteriorated so much that he was placed on suicide watch.

62.   As a result of his incarceration, he stopped receiving Social Security Disability Insurance payments.

63.   Although the charges were dismissed, the records of Plaintiff's arrest including the nature of the charges are accessible to the public.

64. Defendants acted intentionally and/or with deliberate indifference and/or with reckless disregard for Plaintiff's constitutional rights.

65. The constitutional rights Defendants violated were clearly established at the time that the violation occurred and any reasonable officer or individual in the position of Defendants would have understood that their conduct violated Plaintiff's constitutional rights.

66. Defendants are therefore not entitled to qualified or any immunity.

67. Defendants' actions, as described herein, were done with malice or a reckless disregard for Plaintiff's protected rights.

68. Defendants' actions were, in part, motivated by gamesmanship. Defendants, at all relevant times, knew or had reason to know that Plaintiff's charges lacked probable cause but were more concerned with obtaining a conviction despite any exculpatory evidence to boost their own professional standing within the Detroit Police Department and Wayne County Prosecutor's Office.

69. Defendants' actions were, in part, motivated by racial bias, sexual stereotypes, and the dehumanization of young Black men residing in the City of Detroit.

70. Plaintiff's injuries were a direct and/or proximate result of Defendants' actions.

## COUNT I – 42 U.S.C. § 1983
### Violation of the Fourth Amendment – Warrantless Search, Seizure, and Arrest without Probable Cause
**(Defendants Alexander, Valrie, Lynem, Pajakowski )**

71. Plaintiff incorporates all preceding paragraphs by reference as if fully restated here.

72. Defendants' conduct violated Plaintiff's clearly established rights to be free from unreasonable searches, seizures, and arrests.

73. Acting under color of law and pursuant to the customs, policies, and practices of the City of Detroit and/or Detroit Police Department, Defendants, acting in their individual and/or official capacities, have engaged in conduct that violates Plaintiff's rights to be free from warrantless arrests without probable cause.

74. Defendant Pajakowski lacked probable cause when he stopped, seized, searched, and arrested Plaintiff on February 17, 2023.

75. Defendant Lynem lacked probable cause when he instructed Defendant Pajakowski to stop, seize, search, and arrest Plaintiff.

76. Defendant Alexander and Defendant Valrie, jointly and severally, directed the criminal investigation into Plaintiff.

16

77. Defendant Alexander and Defendant Valrie knew or should have known that no officer could rely on probable cause without a warrant to stop, seize, search, and arrest Plaintiff.

78. Defendant Alexander and Defendant Valrie hid, actively avoided, or ignored exculpatory evidence and information tending to vitiate any good-faith belief that probable cause existed to arrest Plaintiff or keep him in custody.

79. Defendant Alexander and Defendant Valrie knew or should have known that they lacked probable cause to search Plaintiff's cell phone without a warrant.

80. Plaintiff's right to be free from unreasonable searches, seizures, and arrests without probable cause were clearly established when they were violated by Defendants.

81. As a direct and proximate result of Defendants' above-described conduct, Plaintiff suffered a loss of liberty, humiliation, and other damages.

82. Plaintiff asks this Honorable Court to enter judgment against Defendants in an amount more than $25,000.00 including, but not limited to punitive and exemplary damages, costs, interest, and

attorneys' fees, and award Plaintiff all just and equitable relief appropriate under the circumstances.

### COUNT II – 42 U.S.C. § 1983
### Violation of the Fourth Amendment – Malicious Prosecution
### (Defendants Alexander and Valrie)

83. Plaintiff incorporates all preceding paragraphs by reference as if fully restated here.

84. Defendants' conduct violated Plaintiff's clearly established rights to be free from wrongful investigations, prosecutions, convictions, and incarceration.

85. Acting under color of law and pursuant to the customs, policies, and practices of the City of Detroit and/or Detroit Police Department, Defendants, acting in their individual and/or official capacities, have engaged in conduct that violates Plaintiff's rights to be free from wrongful investigations, prosecutions, convictions, and incarceration.

86. Defendant Alexander participated in or influenced the decision to criminally prosecute Plaintiff by acting as the OIC and lying about her efforts to investigate S.B.'s claims including, but not limited to, claiming that certain known witnesses refused to cooperate with

18

her investigation when they, in fact, were more than willing to cooperate. Several witnesses even attempted to contact Defendant Alexander and the prosecutor's office directly.

87. Defendant Alexander and Defendant Valrie participated in or influenced the decision to criminally prosecute Plaintiff by hiding, actively avoiding, omitting, or ignoring exculpatory evidence and information tending to vitiate any good-faith belief that probable cause to believe Plaintiff was guilty of S.B.'s or Tiffany Davis's allegations.

88. Defendant Valrie participated in or influenced the decision to criminally prosecute Plaintiff by intentionally failing to memorialize Plaintiff's interrogation in writing to avoid highlighting the lack of probable cause for Plaintiff's arrest and subsequent prosecution.

89. Defendant Alexander and Defendant Valrie knew or should have known that they lacked probable cause to continue Plaintiff's incarceration and subsequent prosecution.

90. Plaintiff's rights to be free from wrongful investigations, prosecutions, convictions, and incarceration were clearly established when they were violated by Defendants.

91. As a direct and proximate result of Defendants' conduct, Plaintiff suffered a deprivation of liberty apart from the initial seizure, humiliation, and other damages.

92. Plaintiff asks this Honorable Court to enter judgment against Defendants in an amount more than $25,000.00 including, but not limited to punitive and exemplary damages, costs, interest, and attorneys' fees, and award Plaintiff all just and equitable relief appropriate under the circumstances.

### COUNT III – State Law – Malicious Prosecution
**(Defendants Alexander and Valrie)**

93. Plaintiff incorporates all preceding paragraphs by reference as if fully restated here.

94. Defendants' conduct violated Plaintiff's clearly established rights to be free from wrongful investigations, prosecutions, convictions, and incarceration.

95. Acting under color of law and pursuant to the customs, policies, and practices of the City of Detroit and/or Detroit Police Department,

Defendants, acting in their individual and/or official capacities, have engaged in conduct that violates Plaintiff's rights to be free from wrongful investigations, prosecutions, convictions, and incarceration.

96. Defendant Alexander participated in or influenced the decision to criminally prosecute Plaintiff by acting as the OIC and lying about her efforts to investigate S.B.'s claims including, but not limited to, claiming that certain known witnesses refused to cooperate with her investigation when they, in fact, were more than willing to cooperate. Several witnesses even attempted to contact Defendant Alexander and the prosecutor's office directly.

97. Defendant Alexander and Defendant Valrie participated in or influenced the decision to criminally prosecute Plaintiff by hiding, omitting, actively avoiding, or ignoring exculpatory evidence and information tending to vitiate any good-faith belief that probable cause to believe Plaintiff was guilty of S.B.'s or Tiffany Davis's allegations.

98. Defendant Valrie participated in or influenced the decision to criminally prosecute Plaintiff by intentionally not memorializing

Plaintiff's interrogation to avoid highlighting the lack of probable cause for Plaintiff's arrest and subsequent prosecution.

99. Defendant Alexander and Defendant Valrie knew or should have known that they lacked probable cause to continue Plaintiff's incarceration and subsequent prosecution.

100. Defendant Alexander's and Defendant Valrie's unconstitutional and unethical actions were motivated by gamesmanship. At all relevant times, Defendants knew that securing a conviction against Plaintiff would increase their professional standing within the Detroit Police Department and Wayne County Prosecutor's Office.

101. Defendant Alexander and Defendant Valrie knew that securing convictions for serious crimes was a factor to be considered in receiving promotions within the Detroit Police Department and their efforts to secure Plaintiff's conviction were motivated by such considerations.

102. Plaintiff's rights to be free from wrongful investigations, prosecutions, convictions, and incarceration were clearly established when they were violated by Defendants.

103. As a direct and proximate result of Defendants' conduct, Plaintiff suffered a deprivation of liberty apart from the initial seizure, humiliation, and other damages.

104. Plaintiff asks this Honorable Court to enter judgment against Defendants in an amount more than $25,000.00 including, but not limited to punitive and exemplary damages, costs, interest, and attorneys' fees, and award Plaintiff all just and equitable relief appropriate under the circumstances.

### COUNT IV – State Law– State Law – False Imprisonment
**(Defendants Alexander, Valrie, Lynem, Pajakowski )**

105. Plaintiff incorporates all preceding paragraphs by reference as if fully restated here.

106. Defendants' conduct violated Plaintiff's clearly established rights to be free from unreasonable arrests and false imprisonment.

107. Acting under color of law and pursuant to the customs, policies, and practices of the City of Detroit and/or Detroit Police Department, Defendants, acting in their individual and/or official capacities, have engaged in conduct that violates Plaintiff's rights to be free from arrests and false imprisonment.

108. Defendant Pajakowski lacked probable cause when he stopped, seized, searched, and arrested Plaintiff on February 17, 2023.

109. Defendant Lynem lacked probable cause when he instructed Defendant Pajakowski to stop, seize, search, and arrest Plaintiff.

110. Defendant Alexander and Defendant Valrie, jointly and severally, directed the criminal investigation into Plaintiff.

111. Defendant Alexander and Defendant Valrie knew or should have known that no officer could rely on probable cause without a warrant to stop, seize, search, and arrest Plaintiff.

112. Defendant Alexander and Defendant Valrie hid, actively avoided, or ignored exculpatory evidence and information tending to vitiate any good-faith belief that probable cause existed to arrest Plaintiff or keep him in custody.

113. Plaintiff's right to be free from unreasonable arrests and false imprisonment were clearly established when they were violated by Defendants.

114. As a direct and proximate result of Defendants' above-described conduct, Plaintiff suffered a loss of liberty, humiliation, and other damages.

115. Plaintiff asks this Honorable Court to enter judgment against Defendants in an amount more than $25,000.00 including, but not limited to punitive and exemplary damages, costs, interest, and attorneys' fees, and award Plaintiff all just and equitable relief appropriate under the circumstances.

## COUNT V – 42 U.S.C. § 1983 - Monell Claim

116. Plaintiff incorporates all preceding paragraphs by reference as if fully restated here.

117. At all relevant times, Defendant City, through its police department, supervisors, and/or policymakers, established and/or maintained the following customs, usages, policies, and/or practices:

   a. Failure to supervise and/or discipline law enforcement officers, including but not limited to the individually named Defendants named herein, with regard to the omission, fabrication and/or falsification of information and documentation during the course of an investigation while, at all times, knowing that this lack of supervision and discipline would likely promote and/or condone unconstitutional

behavior, wrongful arrests, and the prosecution of innocent people. Defendants knew that their unconstitutional behavior would not result in discipline, termination, criticism, or any other form of reprisal thereby guaranteeing the continuation of such unconstitutional actions by employees of Defendant City; and

b. Condoning, approving, ratifying, and acquiescing in known unconstitutional conduct, and known patterns of unconstitutional conduct, undertaken by its employees, including Defendants here, and its supervisors, thereby adopting said conduct as policy of Defendant City , acting through the Detroit Police Department.

118. Defendant City, acting through the Detroit Police Department, was on actual notice that Defendant Alexander's unit, the Special Victims Unit, had a history of being short staffed, overworked, and engaging in unconstitutional conduct including false arrests and wrongful convictions based on inadequate investigations and a failure to adhere to best investigative practices,   and that

Defendant Alexander, as a member of the unit, was in need of additional training, monitoring, and supervision.

119.  Defendant City, acting through the Detroit Police Department, was on actual notice that Defendant Valrie had a history of unconstitutional conduct and citizen complaints concerning his actions as a Detroit Police Officer and that he was in need of additional training, monitoring, and supervision.

120.  Defendant City, acting through the Detroit Police Department, was on actual notice that Defendant Lynem had a history of dishonesty and false statements concerning the reasonableness of arrests such that  his supervision of lower ranking officers  should have been limited, monitored, or curtailed notwithstanding any collective bargaining agreements that mandated his promotion to the rank of Sergeant.

121.  Each of the aforementioned policies, customs, and/or practices (i.e., the failures to train, supervise, and/or discipline the individually named Defendant Officers) was known to Defendant City, as being highly likely and probable to cause violations of the constitutional rights of members of the public including Plaintiff.

122. The conduct of the individually named employees herein was committed pursuant to the customs, policies, and/or practices of Defendant City.

123. Each such custom, policy, and/or practice referenced above was a moving force in the violations of Plaintiff's constitutional rights.

124. As a direct and proximate result of Defendants' above-described conduct, Plaintiff suffered a loss of liberty, humiliation, and other damages.

125. Plaintiff asks this Honorable Court to enter judgment against Defendants in an amount more than $25,000.00 including, but not limited to punitive and exemplary damages, costs, interest, and attorneys' fees, and award Plaintiff all just and equitable relief appropriate under the circumstances.

## **REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiff asks this Honorable Court to enter judgement against Defendants for all the above-mentioned claims in an amount more than $25,000.00 including, but not limited to punitive and exemplary damages, costs, interest, and attorneys' fees, and award

Plaintiff all just and equitable relief appropriate under the given circumstances.

<div style="margin-left: 40%">Respectfully Submitted,</div>

**Dated: February 16, 2025**        BY: */s/ Robert Burton-Harris*
Robert Burton-Harris (P81843)
BURTON-HARRIS LAW, PLC
500 Griswold St., Suite 2450
Detroit, MI 48226-3421
Office: (313) 572-4397
Cell: (734) 548-5148
Fax: (734) 999-0452
Robert@BurtonHarrisLaw.com

<div align="center">

**STATE OF MICHIGAN**
**IN THE THIRD CIRCUIT COURT**
**COUNTY OF WAYNE**

</div>

**RAYVON BRIDGES,**

        Plaintiff,

                                   Case No.  25-      -NO
v.                                          Hon.

**CITY OF DETROIT**, a municipal corporation;
**LISA ALEXANDER**, individual and official capacity;
**KENNETH VALRIE**, individual and official capacity;
**CHARLES LYNEM**, individually; and
**RYAN PAJAKOWSKI**, individually;
       jointly and severally.

        Defendants.

| | |
|---|---|
| ROBERT BURTON-HARRIS (P81843)<br>**BURTON-HARRIS LAW, PLC**<br>*Attorney for Plaintiff*<br>500 Griswold St., Suite 2450<br>Detroit, MI 48226-3421<br>Office: (313) 572-4397<br>Cell: (734) 548-5148<br>Fax: (734) 999-0452<br>Robert@BurtonHarrisLaw.com | |

<div align="center">

**<u>DEMAND FOR JURY TRIAL</u>**

</div>

Plaintiff, **RAYVON BRIDGES,** , hereby demands a trial by jury in the above-captioned cause of action on all issues so triable.

                                 Respectfully Submitted,

**Dated: February 16, 2025**        BY: */s/ Robert Burton-Harris*

Robert Burton-Harris (P81843)
BURTON-HARRIS LAW, PLC
500 Griswold St., Suite 2450
Detroit, MI 48226-3421
Office: (313) 572-4397
Cell: (734) 548-5148
Fax: (734) 999-0452
Robert@BurtonHarrisLaw.com